IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CONLEY MARVIN BELL, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-14-2029 |
| MICHAEL J. STOUFFER, et al., | * | |
| Respondents. | * | |

## MEMORANDUM OPINION

In response to the above-entitled Petition for Writ of Habeas Corpus, Respondents initially filed a Limited Response asserting that the Petition included unexhausted claims and if Petitioner did not waive those claims, it was subject to dismissal in its entirety. (ECF No. 6). Petitioner filed a Reply pursuant to this Court's Order, waiving the claims that were unexhausted. (ECF No. 9). Respondents filed a supplemental Response to the Petition (ECF No. 15),[1] and Petitioner filed a Reply (ECF No. 16). Upon review of the pleadings filed, the Court deems an evidentiary hearing unnecessary. See Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts and Local Rule 105.6 (D. Md. 2016); see also Fisher v. Lee, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons set forth below, the Petition shall be denied and a Certificate of Appealability shall not issue.

### I.   BACKGROUND

**A.   Facts Established at Trial**

Petitioner Conley Bell was convicted of attempted carjacking, second degree assault, and reckless endangerment following a jury trial in the Circuit Court for Anne Arundel County,

---

[1] Respondents filed a Motion for Extension of Time in which to file the Court Ordered Supplemental Response. (ECF No. 12). The motion shall be granted nunc pro tunc.

Maryland. (ECF No 6-2 at 2). He was sentenced to serve 30 years, all but 20 years suspended, with five years of probation following his release from prison. (Id. at 2 n.1).

At trial, the following facts were established. On February 12, 2011, at approximately 7:30 p.m., Joseph Uber drove his four-door Hyundai SUV to a Subway restaurant located on Southern Maryland Boulevard in Lothian, Maryland to pick up dinner for his family. (Id. at 2). On his way into the restaurant, Uber noticed a man and a woman, later identified as Bell and his girlfriend Charity Lowe, sitting on the curb not far from where his car was parked. (Id.). When Uber left the restaurant, he unlocked his car using the remote door unlock feature on his keychain. (Id.). As Uber opened the driver's side door, Bell approached him and began a conversation with Uber. (Id.).

Once Bell began talking to Uber, he recognized him as a former neighbor. (Id.). Uber testified that Bell "lived across the street from him in the same trailer park for a few years until a [few] months before the encounter" at the Subway parking lot. (Id.); (see ECF 15-1 at 54). Uber further testified that during the period Bell was his neighbor, he had "interacted with him at least twenty times." (ECF No 6-2 at 2). Uber stated that he had allowed Bell to use his house and cell phone, had taken both Bell and his girlfriend to the store on several occasions, and had loaned Bell his car twice. (Id.). Uber explained that during their conversations, Bell had told him about "some of the difficulties he was having." (Id. at 3). Uber also testified that he recognized Bell's girlfriend with whom he had interacted approximately ten times. (Id.).

Uber testified that as he was talking to Bell in the Subway parking lot, Bell moved closer to him and eventually backed him up against the passenger side door of Uber's car. (Id.). At that point, Bell put his arm around Uber's shoulder and while bunching up Uber's jacket collar, grabbed the lower part of his jacket with his left hand. (Id.). Bell told Uber, "we're homeless" and asked Uber if he was going to take them where they wanted to go. (Id.). When Uber

2

refused, Bell pulled out a knife with a three-inch blade and pressed it to Uber's throat. (Id.). Bell then said, "You're going to fucking take us wherever we want to go." (Id.). Uber feigned cooperation due to his limited ability to defend himself and told Bell he would drive him wherever he needed to go. (Id.).

As Uber moved to sit in the driver's seat of his car, Bell yelled to his girlfriend to get in the car and she complied. (Id.). Bell then told Uber that he was going to drive. (Id.). Uber then crawled over the middle console, between the driver's seat and the front passenger's seat, and when he reached the passenger side, opened the door, exited the car, and slammed the door behind him. (Id.). Uber still had possession of the key and once out of the car, pushed the door lock and alarm button on the key, causing the alarm on the car to activate. (Id.). Uber then ran toward the road and a passerby stopped and called the police. (Id.).

Two police officers responded to the call and described Uber as very upset. (Id. at 4). Uber told the officers that he had been assaulted by a former neighbor and gave them both Bell's name and a description of Bell. (Id.). Police located Bell and his girlfriend less than one-half hour later, walking down a rural road less than two miles from the Subway. (Id.). When Bell was arrested, the officer noticed that he appeared to be drunk because his eyes were "red and glassy," he had a strong odor of alcohol on his breath and on his body, and his speech was slurred. (Id.). No weapon was found on Bell when he was arrested. (Id.).

**B.** **State Appellate and Post-Conviction Review**

On direct appeal, Bell argued that the evidence presented at trial was insufficient to support the guilty verdict. The Court of Special Appeals summarized Bells claim as follows:

> Specifically, he argues that he did not intend to harm Uber or steal his car. In support of his argument, [Bell] points to the fact that he and Uber had gotten along well in the past, that given the disparity in physical abilities [Bell] could have harmed Uber and taken his car but no injuries were observed, that he never "targeted" Uber's keys, that his inebriation contributed to the "misunderstanding,"

3

and that he and his girlfriend did not flee or hide but were found "merely walk[ing] up the road."

(Id.). The court noted that defense counsel made a motion for judgment of acquittal at the close of the State's case. Defense counsel argued that the State failed to meet their burden to establish that Bell (1) used a dangerous and deadly weapon, (2) placed Uber in fear in an effort to obtain unauthorized possession or control of Uber's car, (3) committed an assault on Uber, (4) used a weapon that qualifies as a dangerous weapon, or (5) brandished the weapon in such a way it would lead anyone to believe there was an intent to cause injury. (Id. at 5).

The Court of Special Appeals found that the argument raised by Bell was not preserved for review and even if it had been, it was without merit. (Id. at 5–6). The court noted that carjacking[2] is a general intent crime, and under Maryland law, it "can be committed in three different ways: a consummated battery, an attempted battery, or placing the victim in reasonable fear of an imminent battery." (Id. at 7). The court then noted that:

> The three crimes of which [Bell] was convicted were general intent crimes, and common to all three is their general intent – to place Uber in fear. Attempted carjacking also requires the additional general intent to attempt to take unauthorized control of a motor vehicle. . . .
>
> Because a rational juror was free to credit all of Uber's testimony, the evidence elicited could persuade a rational juror beyond a reasonable doubt that appellant had the requisite general intent to place Uber in fear. Although the initial interaction was friendly, that quickly changed to frightening when appellant backed Uber up against his SUV, placed his arm around the back of Uber's neck and bunched the fabric of his collar. Then, when Uber refused to give him a ride, [Bell] drew out a three-inch blade knife and placed against Uber's throat, saying "You're going to fucking take us wherever we want to go." When Uber went to sit in the driver's seat, appellant ordered him into the front passenger seat. To the extent that [Bell] attempts to invoke involuntary intoxication as a defense, we note that while voluntary intoxication is a defense to a specific intent crime, it is not a defense to a general intent crime . .

---

[2] The crime of carjacking is codified under Md. Code Ann., Crim. Law § 3-405(b) (West 2017).

> . . [Bell's] other points . . . offer no legitimate bases to disturb the jury's verdict as they fall within the purview of the fact finder. Because a rational juror could credit Uber's testimony and find appellant possessed the requisite intent to commit the crimes charged, we shall affirm the judgments.

(Id. at 8–9).

Bell filed a post-conviction petition on October 24, 2012, and a hearing was held on June 24, 2013. Bell raised four principal claims. First, the State failed to prove that Bell made efforts to obtain unauthorized possession or control of Uber's vehicle by using a dangerous and deadly weapon or by placing the victim in fear, committed assault, or used a weapon in furtherance of the commission of the alleged crimes. Second, trial counsel was ineffective when she failed to show the State had not met its burden, present proper questions to be resolved at trial, preserve any of Bell's questions for judgment of acquittal for appellate review, file a motion for modification of sentence or properly noting an appeal, and to communicate with Bell to determine if he wanted a motion for modification of sentence filed. Third, the trial judge was biased. Fourth, the State engaged in "selective prosecution" using illegally obtained evidence. (ECF No. 6-3 at 2–3).

## C.     Claims in this Court

Bell raises two principal claims in this Court. First, the State engaged in prosecutorial misconduct through the use of illegal trial tactics. Second, trial counsel rendered ineffective assistance of counsel when she made an inadequate motion for judgment of acquittal, failed to preserve rights via objections, and failed to communicate and advise Bell effectively.[3]

---

[3] Bell waived the remaining claims raised after Respondents asserted and this Court found that they were not properly exhausted and a stay and abeyance was unwarranted. (See ECF No. 9).

## II. DISCUSSION

A. **Standard of Review**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Section 2254 sets forth a "highly deferential standard for evaluating state-court rulings." Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997); see also Bell v. Cone, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis of § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." Id. (quoting Williams, 529 U.S. at 410) (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. Id. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." Id. at 379.

**B.    Analysis**

   **1.    Prosecutorial Misconduct**

It is undisputed that "[a] fair trial in a fair tribunal is a basic requirement of due process." In re Murchison, 349 U.S. 133, 136 (1955). Likewise, it has long been held that prosecutors are held to a high standard of fairness. See Berger v. United States, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that

7

justice shall be done."). In order to establish prejudicial misconduct on the part of the prosecutor, the alleged misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986); United States v. Caro, 597 F.3d 608, 624 (4th Cir. 2010). In order to reverse a conviction based upon a claim of prosecutorial misconduct, Bell "must show (1) 'that the prosecutor's remarks or conduct were improper' and (2) 'that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial.'" Caro, 597 F.3d at 624–25 (United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002)).

In his claim of prosecutorial misconduct, Bell asserts that there was no proof at trial that he had the criminal intent to deprive the victim of his vehicle or that a weapon was used because none was found. (ECF No. 1-1 at 8). Bell states that this constitutes selective prosecution and seems to suggest that his explanation to trial counsel regarding "the true events" should have been believed over any other evidence presented at trial. (Id.) The Court finds that nothing Bell has asserted approaches misconduct on the part of the prosecutor such that the trial was rendered unfair. As the Court of Special Appeals observed on direct review, the evidence presented at trial, mainly the testimony of the victim Mr. Uber, was sufficient to support the conviction. Bells attempt to couch this claim as something other than a challenge to the sufficiency of the evidence fails.

The standard of review for a sufficiency of the evidence claim on habeas corpus is whether after viewing evidence in a light most favorable to the prosecution, any rational trier of fact could the find essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). This Court must consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from the facts proven to the facts sought to be established. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.

1982).  More importantly to the instant case, the determination of the credibility of each witness is within the sole province of the jury and is not susceptible to review.  United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).

The Court concludes, therefore, that federal habeas relief is not available on this claim.

### 2. Ineffective Assistance of Counsel

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors.  Id. at 696.

Because the instant petition is subject to the provisions of the federal habeas statute, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (the "Act"), in order to obtain relief on his ineffectiveness claims, the petitioner must show that the adjudication of such claims at the state court level:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (Supp. 1997).  The Act further provides that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of

>rebutting the presumption of correctness by clear and convincing evidence.

Id. § 2254(e)(1).

As the Supreme Court held in Strickland, "a state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent stated by [former] 28 U.S.C. § 2254(d)[ now § 2254(e)(1)]." 466 U.S. at 698. Rather, "although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of §2254[(e)(1)], . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." Id. It follows, then, that § 2254(d)(1) applies to the state court's conclusion that the petitioner's trial counsel rendered effective assistance of counsel and this Court may not grant relief on this claim as long as the state court denied the claim based on a reasonable application of the Strickland standard to the facts presented in the state court proceeding.

Bell asserts that trial counsel was ineffective because she made an inadequate motion for judgment of acquittal. The post-conviction court observed that this claim appears to be the result of some confusion on Bell's part as counsel renewed the very cogent motion for judgment of acquittal when she "submitted" on her prior argument. (ECF No. 6-3 at 7–8). Counsel's motion for judgment of acquittal raised claims that the State failed to meet their burden of proof on the elements of the charges Bell was facing. (ECF No. 15-1 at 108). The failure to repeat verbatim the grounds for the motion when renewing that motion is not an error or deficient performance. (See id. at 125 (renewal of motion)). The Court concludes, thus, that this claim does not state a basis for federal habeas relief.

Bell also claims that trial counsel was ineffective because she failed to preserve rights by objecting and failed to communicate and advise Bell effectively. It is not entirely clear what Bell is alleging with regard to these two claims, but he appears to combine the two in his discussion

about admission of hearsay evidence and an attorney's ethical responsibility to communicate with her client. (ECF No. 1-1 at 8); (ECF No. 7 at 10–11). Bell states that counsel failed to object "to the oral testimony by [the] State Prosecutor, Anastasia Prigge, and witness Joseph Uber as to be testimonial hearsay." (ECF No. 1-1 at 8). He further claims that trial counsel failed to object at trial to "all the frivolous evidence presented by the State and testimony of the state's witness." (Id. at 9). With regard to his attorney's ethical obligation, Bell states that trial counsel erred when she did not consult with him or advise him about the fact that his co-defendant, Charity Lowe, received a favorable plea deal in a separate proceeding. (Id. at 11–12).

Bell's allegation regarding the failure to object is a bald assertion that does not include any evidence to support it. He points to no particular instance where inadmissible evidence was allowed to be introduced and trial counsel failed to object. With respect to the disposition of his co-defendant's case, Bell's trial counsel cannot be viewed as deficient for failing to advise him of matters wholly separate and apart from the matters at issue in his trial. Accordingly, the Court concludes that neither of Bells claims for ineffective assistance of counsel presents a basis for federal habeas relief.

### III. CONCLUSION

The Court concludes that Bell is not entitled to federal habeas relief. There is no basis upon which to find constitutional deficiencies in the state court proceedings, Bell having failed to rebut the presumption of correctness of the findings of fact underlying the rejection of his grounds for post-conviction or appellate relief. Accordingly, the petition shall be dismissed with prejudice by separate Order.

In addition, this Court must consider whether a Certificate of Appealability should issue. A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Bell "must demonstrate that

11

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not issue. See 28 U.S.C. § 2253(c)(2). A separate Order follows.

Entered this 30th day of May, 2017

/s/
_____
George L. Russell, III
United States District Judge